<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWARD SALERNO,    :
         :  Civil Action No. 06-3547 (FSH)
    Plaintiff, :
         :
    v.    :  **OPINION**
         :
JON CORZINE, et al.,   :
         :
    Defendants. :

**APPEARANCES:**

  EDWARD SALERNO, Plaintiff <u>pro</u> <u>se</u>
  Special Treatment Unit
  8 Production Way
  Avenel, New Jersey 07001

**HOCHBERG**, District Judge

  Plaintiff Edward Salerno ("Salerno"), a civilly-committed person confined at the Special Treatment Unit in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predators Act ("SVPA"), N.J.S.A. 30:4-21.1, <u>et</u> <u>seq</u>., seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a)(1) and order the Clerk of the Court to file the Complaint.

  At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from defendants who are immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from plaintiff's Complaint and are accepted as true for purposes of this review.

Salerno was civilly committed pursuant to the SVPA since August 2001.[1]  He claims that on or about September 14, 2004, while he was confined at the Special Treatment Unit ("STU") Annex, the staff placed Salerno on "treatment refusal status" with a loss of privileges because Salerno refused to give self-incriminating statements during treatment sessions.  Salerno claims that the staff at STU Annex are coercing him to make self-incriminating statements by denying him privileges while confined at STU.  It appears that plaintiff is asserting a violation of his Fifth Amendment right against compelled self-incrimination and violations of his First Amendment rights not to be forced to

---

[1]  The SVPA provides for the custody, care and treatment of civilly committed sexually violent predators.  <u>N.J.S.A.</u> 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for sexually violent predators, <u>N.J.S.A.</u> 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  <u>N.J.S.A.</u> 30:4-27.34(b).  The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with  of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  <u>N.J.S.A.</u> 30:4-27.34(d).

2

participate in treatment, or be subject to retaliatory punishment for the exercise of his First and Fifth Amendment rights (right to refuse treatment and right against compelled self incrimination).

Salerno claims that his "treatment refusal status" and attending loss of privileges has continued from September 2004 through August 2006 when Salerno filed this Complaint.  Salerno alleges that he has been denied the right to commissary and packages.  He has lost his institutional job and some personal property.  His television privileges also were revoked.

Salerno has filed letters of grievance and remedy forms with administrative personnel in an attempt to exhaust his administrative remedies.  He brings this action against numerous defendants as follows: Governor Jon Corzine and former Governors Richard Codey and James E. McGreevey (Salerno generally asserts that these defendants were made aware of the policy at STU with regard to making plaintiff give self-incriminating statements); the New Jersey Department of Human Services ("DHS"); the New Jersey Division of Mental Health ("DMH"); Ms. Lorna Hines-Cunningham, Assistant Division Director of DHS; the Office of the Public Defender; Joan Richardson Bowser, First Assistant Public Defender; Patrick Reilly, Deputy Public Defender; the New Jersey Department of Corrections ("DOC"); Devon Brown, former Commissioner of the DOC; John Main, CEO of the STU Annex; Grace

3

Rogers, Administrator at STU Annex; Paul Lagana, STU Annex; Merrill Main, Director at the STU Annex; Tina Spagnuolo, Unit Director at STU Annex; Dr. Gregory Gambone, psychologist; Jenna Caccese, former Program Director; Marielena Motta, Program Director; Ruth Roth, Recreation Supervisor; Lou Norton, Vocational Rehabilitation Counselor; Dr. Carol Lester, psychologist; Dr. Phillip Leavitt, psychologist; Dr. Kireev, psychologist; Dr. Tom Calabrese, psychologist; Dr. Eppellitto, psychologist at STU Kearny; Devon Bullard, social worker; Julie McBride; Mr. Reeves, social worker; Mr. Rodriguez, social worker; Mr. Thompson, social worker; Mr. J. Miles, BMPT; Dr. A. Levinson, psychologist.

In addition to damages in excess of $20 million from each defendant, plaintiff asks that he be restored back to the position he occupied before defendants began their conduct and policy of compelling plaintiff's self-incrimination.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading

requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

     Plaintiff brings this action pursuant to 42 U.S.C. § 1983
alleging violations of his civil rights guaranteed under the
United States Constitution.  Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting

under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

A.  <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>see also Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 70-71 and n.10 (1989)(neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983).

Thus, Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Therefore, the Complaint will be dismissed in its entirety against the state agency defendants, the Department of Human Services, the Division of Mental Health, and the Department of Corrections.

B.  Supervisor Liability

Respondeat superior is not a basis for liability under § 1983.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)(Section 1983 liability cannot be predicated solely on the operation of respondeat superior).  Thus, for a supervisor to be held liable under § 1983, he or she must be "personally involved" in causing the alleged wrongdoing.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  Personal involvement may be established by showing that the supervisory defendant (a) participated in violating plaintiff's rights; (b) directed others to violate them; or (c) as a person in charge, had knowledge of and acquiesced in his subordinates' violation.  A.M. ex rel J.M.K. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)(citing Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d

Cir. 1995)).  Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. Rode, 845 F.2d at 1207-08.

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, plaintiff names the current and former Governors of the State of New Jersey as defendants in this matter.  His general allegations against these defendants are plainly based on a theory of respondeat superior.  He makes no allegations of particularity that these defendants had any personal involvement in the alleged wrong.  Therefore, the Complaint will be dismissed in its entirety as against these defendants.

C.  Public Defender Defendants

Next, plaintiff names the Office of the Public Defender and individual public defenders, Joan Richardson Bowser and Patrick Reilly as defendants in this lawsuit under § 1983.  Salerno

alleges that he wrote to the Public Defender's Office in October
2004 to complain about the STU's policy in compelling plaintiff
to make self-incriminating statements in treatment programs.  The
matter was referred to Ms. Bowser, and then Patrick Reilly for
review.  Salerno claims these defendants did nothing to correct
the situation.

Court-appointed counsel, public defenders, and investigators
employed by a public defender are absolutely immune from civil
liability under § 1983 when acting within the scope of their
professional duties.  Black v. Bayer, 672 F.2d 309, 317 (3d
Cir.), cert. denied, 459 U.S. 916 (1982).  Cf. Tower v. Glover,
467 U.S. 914, 923 (1984) ("state public defenders are not immune
from liability under § 1983 for intentional misconduct, 'under
color of' state law, by virtue of alleged conspiratorial action
with state officials that deprives their clients of federal
rights").

Although not "immune" from suit or liability, an attorney
may be entitled to dismissal of a civil rights action on the
ground that it fails to state a claim, because lawyers,
typically, are not "state actors."  "[A] lawyer representing a
client is not, by virtue of being an officer of the court, a
state actor 'under color of state law' within the meaning of
§ 1983." Polk County v. Dodson, 454 U.S. 312, 318 (1981).
Similarly, a public defender "does not act under color of state

10

law when performing a lawyer's traditional functions as counsel
to a defendant in a criminal proceeding." Polk Co. v. Dodson,
454 U.S. at 325.  A public defender (as any other private person)
does act "under color of state law," however, when engaged in a
conspiracy with state officials to deprive a defendant of federal
rights.  Tower v. Glover, 467 U.S. 914 (1984).

In this case, the Complaint does not allege any facts to
show that the public defender defendants were acting under color
of state law.  Salerno wrote to them seeking their assistance in
his claim that his right against compelled self-incrimination was
being violated.  Further, there are no allegations that the
public defenders were engaged in any conspiracy with state
officials to deprive Salerno of any federal constitutional
rights.  It appears that these defendants merely denied Salerno
representation in this matter.  Therefore, the Complaint will be
dismissed in its entirety against the Office of the Public
Defender, Joan Richardson Bowser, and Patrick Reilly for failure
to state a claim upon which relief may be granted.

The Court now turns to examine the claims asserted by
Salerno against the remaining state officials acting in their
individual capacities.[2]

---

[2]  The remaining defendants are Ms. Lorna Hines-Cunningham,
Assistant Division Director of DHS; Devon Brown, former
Commissioner of the DOC; John Main, CEO of the STU Annex; Grace
Rogers, Administrator at STU Annex; Paul Lagana, STU Annex;
Merrill Main, Director at the STU Annex; Tina Spagnuolo, Unit

IV.   <u>ANALYSIS</u>

A.   <u>First Amendment Claim</u>

Salerno basically asserts that defendants have tried to
force him to participate in SVPA treatment sessions in violation
of his constitutional rights.  He argues that defendants have
retaliated against him for refusing to vocally participate[3] in
the treatment program at the STU by revoking certain privileges,
including the loss of television, commissary privileges, his
institutional job, and other privileged items.  It also appears
that plaintiff's "treatment refusal status" impedes his
advancement or progression in treatment, which may be used
against him at his re-commitment hearings as an indication that

_____

Director at STU Annex; Dr. Gregory Gambone, psychologist; Jenna
Caccese, former Program Director; Marielena Motta, Program
Director; Ruth Roth, Recreation Supervisor; Lou Norton,
Vocational Rehabilitation Counselor; Dr. Carol Lester,
psychologist; Dr. Phillip Leavitt, psychologist; Dr. Kireev,
psychologist; Dr. Tom Calabrese, psychologist; Dr. Eppellitto,
psychologist at STU Kearny; Devon Bullard, social worker; Julie
McBride; Mr. Reeves, social worker; Mr. Rodriguez, social worker;
Mr. Thompson, social worker; Mr. J. Miles, BMPT; Dr. A. Levinson,
psychologist.  It appears from the Complaint and attachments to
the Complaint that these individual were personally involved in
the conduct alleged unconstitutional by Salerno.  It also appears
that, with respect to the Directors and Administrators, Salerno
wrote to these individuals directly in an attempt to remedy his
complaints about the compelled self incrimination.

   [3]  Salerno's refusal to participate relates to his objection
to giving self-incriminating statements during his treatment
sessions.

plaintiff is not sufficiently rehabilitated to re-enter society.[4]

At this preliminary stage, the Court is inclined to allow this claim to proceed where it appears that the stakes for plaintiff's participation in treatment are so high and the deprivations incurred by refusing to participate in treatment, namely, a likely impediment to any consideration for eventual release during re-commitment proceedings, may rise to the level of compulsion that might violate the First Amendment.  See Hydrick v. Hunter, 466 F.3d 676 (9th Cir. 2006)(discussing the

_____

[4]  In M.X.L. v. New Jersey Dep't of Human Services/New Jersey Dep't of Corrections, 379 N.J. Super. 37 (App. Div. 2005), the New Jersey Appellate Division discussed the treatment program administered at the STU and its goals:

> Decisions regarding the treatment program at the STU are based on judgments exercised by qualified professionals. Youngberg v. Romero, [457 U.S. 307, 322 (1982)].  In administering the clinical treatment program at STU, the emphasis is on stabilizing disruptive or dangerous behaviors.  The STU Program is designed to enhance behavioral stability and pro-social functioning.  Those residents whose internal behavior controls deteriorate such that they pose a threat or danger to themselves, other residents and/or STU staff are subject to increased external controls and reduction of privileges. ...

> If the State were required to provide the same prerequisites to those who are non-compliant with the treatment program, as are given to those who are participating in the program and demonstrating continued appropriate behavior, "the result would be a dramatic illustration that obduracy has the same rewards as acceptance, and so the program itself would become self-defeating, even hypocritical in the eyes of those whom it seeks to help."  McKune v. Lile, [536 U.S. 24, 48 (2002)].

M.X.L., 379 N.J. Super. at 875-76.

13

volatility of this issue, *i.e.*, whether the right to refuse participation in such treatment is clearly established under the First Amendment); Wolfe v. Penn. Dep't of Corrections, 334 F. Supp.2d 762 (E.D.Pa. 2004)(allowing an inmate to proceed past pre-trial motions on First Amendment grounds where the right to parole was conditioned on participation in treatment). But see Thorpe v. Grillo, 80 Fed. Appx. 215, 217-19, 2003 WL 22477890 (3d Cir. 2003)(unpubl.)(a non-precedential opinion where the Third Circuit found (1) no constitutional right to parole thereby foreclosing the Fourteenth Amendment due process claim, and (2) no Fifth Amendment self-incrimination violation because the inmate was not automatically denied consideration for parole and was not forced to incriminate himself at trial), cert. denied, 542 U.S. 924 (2004).

B.  The Privilege Against Self-Incrimination

     Salerno also clearly asserts a violation of his Fifth Amendment right against compelled self-incrimination.  The Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  The Self-Incrimination Clause applies to the States through the Fourteenth Amendment.  Malloy v. Hogan, 378 U.S. 1, 6 (1964).  The Clause speaks of "compulsion," United States v. Monia, 317 U.S. 424, 427 (1943), and the U.S. Supreme Court has emphasized that the

14

"constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony." <u>United States v. Washington</u>, 431 U.S. 181, 188 (1977).

In <u>McKune v. Lile</u>, 536 U.S. 24 (2002), a sharply-divided Supreme Court held that the Fifth Amendment right against compelled self-incrimination is not violated by a prison sexual-abuse treatment program which imposes loss of various prison privileges for failure to participate in a counseling program that requires the inmates to complete an unprivileged sexual history form which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses.  In upholding the constitutionality of the treatment program, both the plurality and the concurring Justices noted that failure to participate did not affect eligibility for good time credits or parole.  <u>See</u> 537 U.S. at 38 (Kennedy, J., plurality opinion); 537 U.S. at 52-53 (O'Connor, J., concurring).

Relying upon <u>McKune</u>, the Superior Court of New Jersey, Appellate Division, invalidated a New Jersey statute[5] to the

_____

[5] N.J.S.A. 2C:47-8 provides, in pertinent part:

> a term of imprisonment imposed on a person confined to the Adult Diagnostic and Treatment Center ... shall not be reduced by progressive time credits or credits for diligent application to work and other institutional assignments for any year or fractional part of a year if the person failed to fully cooperate with all treatment offered to him during that time period.

extent it permitted good time credits to be withheld or revoked based upon a prisoner's refusal to disclose information about past events for which he could face subsequent prosecution. Bender v. New Jersey Dept. of Corrections, 356 N.J. Super. 432 (App. Div. 2003).  One year later, the Appellate Division expanded upon Bender, holding that a prisoner retains his privilege against self-incrimination until he has exhausted the direct appeal process from his criminal conviction, that a prisoner is not required to discuss the crimes for which he was convicted until his petition for certification is denied by the Supreme Court of New Jersey, and that good time credits may not be withheld or revoked based upon the refusal to disclose information about the crime of conviction until the direct appeals are exhausted.  Lewis v. Dept. of Corrections, 365 N.J. Super. 503 (App. Div. 2004).

In Chavez v. Martinez, 538 U.S. 760 (2003), the Supreme Court indicated that violations of the prophylactic rules safeguarding the right against compelled self-incrimination do not amount to actual constitutional violations as required for civil liability under § 1983.  See also Renda v. King, 347 F.3d 550, 559 (3d Cir. 2003)(stating that "it is the use of coerced statements during a criminal trial ... that violates the Constitution")(citations omitted).

As noted above, the Court of Appeals for the Third Circuit, has held in a non-precedential opinion that there is no Fifth Amendment violation in forcing a prisoner to choose between maintaining his innocence (with respect to the crime of which he was convicted) and participating in a treatment program necessary for parole recommendation.  See Thorpe v. Grillo, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003) (unpubl.), cert. denied, 542 U.S. 924 (2004).[6]

---

[6] The Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal.  See, e.g., Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in good time credits, loss of eligibility for good-time credits as a consequence of refusing to admit crime of conviction does not violate Self-Incrimination Clause); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003) (voluntary sexual offender treatment program which requires participant to admit crime and divulge other offenses does not violate Self-Incrimination Clause, even though non-participation results in denial of parole); Vinson v. Michigan Parole Board, 2006 WL 305653 (E.D. Mich. 2006) (parole board's consideration of prisoner's refusal to accept responsibility for his crime does not violate Self-Incrimination Clause); Sullivan v. Pennsylvania Bd. of Probation and Parole, 2006 WL 1050526 (W.D. Pa. 2006) (where there is no liberty interest in parole, no Fifth Amendment violation from adverse parole decision based upon refusal to admit to crime of conviction or other potentially criminal behavior); Donhauser v. Goord, 314 F. Supp.2d 119, 127 (N.D.N.Y. 2004) ("requiring plaintiff as part of the [sexual offender counseling program] to divulge a history of sexual conduct, including illegal acts for which no criminal charges have been brought, or else face a loss of good time credits, violates his Fifth Amendment privilege against self-incrimination"); Boddie v. New York State Division of Parole, 288 F. Supp.2d 431 (S.D.N.Y. 2003) (Fifth Amendment does not prohibit parole authorities from drawing an adverse inference from an inmate's refusal to answer

The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction.  See Minnesota v. Murphy, 465 U.S. 420, 426 (1984).  However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities."  Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478 (1972).  "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination."  Marchetti v. United States, 390 U.S. 39, 53 (1968) (citations omitted).  Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of privilege that meets constitutional muster."  In re Corrugated Container Antitrust Litigation, 662 F.2d 875, 883 (D.C.Cir.1981) (citing In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir.1979)).

Here, Salerno is a civilly committed person and not an inmate anticipating parole.  However, the Court finds this distinction to be immaterial in plaintiff's Fifth Amendment claim because there does not appear to be any "real" possibility that Salerno could be subject to future prosecution for admitting his responsibility for the crimes of which he was convicted and has already served his time in prison.  See, e.g., Neal v. Shimoda,

---

questions regarding the crime of conviction).

131 F.3d 818, 833 (9th Cir. 1997) (where double jeopardy considerations would preclude use of admission in any future prosecution, possibility of incrimination from admission that prisoner committed the crime of conviction is no more than a "remote and speculative possibility" insufficient to trigger Fifth Amendment protection); Lewis, 365 N.J.Super. at 507 (where direct appeals are exhausted, prisoner no longer has a Fifth Amendment privilege to refuse to answer questions about the crime of conviction).

Accordingly, the possibility that Salerno's admissions during his treatment program could lead to further prosecution is "remote and speculative." Salerno no longer has a Fifth Amendment privilege against answering questions about the crime of conviction for which he has already completed his term of imprisonment.[7] Cf. Rice v. Michigan Parole Board, 2005 WL 2297463 (W.D. Mich. Sept. 21, 2005) (where no appeals or post-conviction relief proceedings remain pending, possibility of any admission to crime of conviction incriminating prisoner in the future "is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination"). Consequently, the Court finds that Salerno fails to state a claim for violation of the Self-

---

[7] It does not appear, and Salerno does not allege, that he has direct appeals or post-conviction relief proceedings still pending.

Incrimination Clause and this claim will be dismissed
accordingly.[8]

## V.    CONCLUSION

For the reasons set forth above, the Complaint will be
dismissed in its entirety, pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(iii), as against defendants, the Department of
Human Services, the Division of Mental Health, and the Department
of Corrections because they are immune from liability under the
Eleventh Amendment.  In addition, the Complaint will be dismissed
in its entirety, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as
against defendants, Governor Corzine, former Governors Codey and
McGreevey, the Office of the Public Defender, Joan Richardson

---

[8] Should Salerno be able to establish that any admission to
the crimes of conviction otherwise would subject him to a real
possibility of prosecution, he may make an application to amend
his Complaint accordingly.  Cf., e.g., Thomas v. Independence
Township, 2006 WL 2621094 (3d Cir. 2006) ("Even when a defendant
does not formally move for a more definite statement, the
district court has the discretion to demand more specific factual
allegations in order to protect the substance of the qualified
immunity defense and avoid subjecting government officials who
may be immune from suit to needless discovery and the other
burdens of litigation.").  Plaintiff should note that when an
amended complaint is filed, the original complaint no longer
performs any function in the case and "cannot be utilized to cure
defects in the amended [complaint], unless the relevant portion
is specifically incorporated in the new [complaint]."  6 Wright,
Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.
1990) (footnotes omitted).  An amended complaint may adopt some
or all of the allegations in the original complaint, but the
identification of the particular allegations to be adopted must
be clear and explicit.  Id.  To avoid confusion, the safer course
is to file an amended complaint that is complete in itself.  Id.

Bowser, and Patrick Reilly, for failure to state a claim upon which relief may be granted.  Finally, as to the remaining defendants, the Court will dismiss the Fifth Amendment claim asserting a violation of plaintiff's right against compelled self-incrimination because plaintiff fails to state a claim; however, the Court will allow the First Amendment claims to proceed at this time.  An appropriate order follows.

   /s/ Faith S. Hochberg
United States District Judge

Dated:  December 20, 2006