**NOT FOR PUBLICATION**                                                                                   **CLOSED**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| EDWARD SALERNO, : | |
| : | Civil Action No. 06-3547 |
| Plaintiff, : | Hon. Faith S. Hochberg, U.S.D.J. |
| v. : | |
| : | **OPINION AND ORDER** |
| JON CORZINE, *et al.*, : | |
| : | July 25, 2007 |
| Defendants. : | |

**HOCHBERG, District Judge.**

This matter comes before the Court upon Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c).[1] The court has reviewed the submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.    Factual Background and Procedural History.**

Edward Salerno is a sexually violent predator civilly committed to the Special Treatment Unit Annex ("STU Annex") in Kearny, New Jersey pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27, 24 *et. seq.*  Plaintiff filed a complaint pursuant to 42 U.S.C. §1983, alleging that his constitutional rights were violated by New Jersey Department of

---

[1] State Defendants filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment.  Because this Court's Opinion relies on the submitted affidavit of Dr. Merrill Main, the acting Clinical Director of the Special Treatment Unit, to address the constitutional claims raised by Plaintiff, the Court will consider the motion as a Motion for Summary Judgment.

-1-

Human Services employees Lorna Hines-Cunningham, John Main, Merrill Main, Tina Spagnuolo, Gregory Gambone, Jenna Caccese, Marielena Motta, Ruth Roth, Lou Norton, Dr. Carol Lester, Phillip Leavitt, Dr. Kireev, Tom Calabrese, Dr. Eppellitto, Devon Bullard, Julie McBride, Mr. Reeves, Mr. Rodriguez, Ms. Thompson, Mr. J. Miles and Dr. A. Levinson and New Jersey Department of Corrections employees Devon Brown, Grace Rogers, and Paul Lagana.[2]

Plaintiff alleges that Defendants violated his First and Fifth Amendment rights by coercing him to make incriminating statements in group treatment and by taking away privileges when Plaintiff refused to discuss his past sex offenses. The Court, *sua sponte*, dismissed Plaintiff's Fifth Amendment claim in a December 20, 2006 opinion and allowed the First Amendment claim to proceed. The court now reviews Defendants' Motion for Summary Judgment.

**II.     Standard of Review.**

Pursuant to Rule 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143

---

[2] It appears that not all Defendants have been served. This decision applies to all Defendants, including those not yet served.

(3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1349 (3d Cir. 1994).

The party seeking summary judgment must establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *See Celotex Corp.*, 477 U.S. at 322–23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324.[3]

### III.     Defendants are Entitled to Qualified Immunity.

To prevail under 42 U.S.C. §1983, a plaintiff must demonstrate that he was deprived of a federal right secured by the Constitution by a person acting under color of state law. *Popow v. City of Margate,* 476 F.Supp. 1237, 1240 (3d Cir. 1970) (*citing Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 150 (1970)). Plaintiff asserts that Defendants violated his First Amendment right to free speech by withholding privileges in response to Plaintiff's refusal to participate in group treatment. Plaintiff argues that conditioning privileges on the admission of past sex offenses during group treatment compels speech in violation of the First Amendment.

---

[3] It is clear that if a moving party satisfies its initial burden of establishing a prima facie case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586. Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (*quoting First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Defendants assert a qualified immunity defense to Plaintiff's First Amendment claim. Qualified immunity protects government officials from civil liability for any action that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts have repeatedly emphasized that qualified immunity is "an immunity from suit rather than a mere defense to liability," and that as such, qualified immunity questions shall be resolved "at the earliest possible stage in litigation." *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Claims of qualified immunity are analyzed under a two-step process. *Id.* The Court must first "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Sutton v. Rasheed*, 323 F.3d 236, 250 n.27 (3d Cir. 2003) (*citing Wilson v. Layne*, 526 U.S. 603, 609 (1999)). If the plaintiff has alleged such deprivation, the Court must "proceed to determine whether the right was clearly established at the time of the alleged violation." *Id.*

The Supreme Court held in *McKune v. Lile* that in the context of a sex offender treatment program, adverse consequences faced by an individual for refusing to make admissions required for participation in the program will not violate the individual's constitutional rights if the adverse consequences were "related to the program objectives and do not constitute atypical and significant hardships in relationship to ordinary incidents" of confinement. 536 U.S. 24, 37 (2004). Although *McKune* dealt with a sex offender's First Amendment rights in the context of a prison treatment program, where civil commitment rules and procedures are "facially related to the purposes for which the [sexually violent predators were] detained,"[4] the facility directors are

---

[4] Defendants in this case submitted an affidavit from Dr. Merrill Main, Acting Clinical Director of the STU, which states that:
"4. An important component of treatment for sexually violent predators is for the patient

entitled to qualified immunity because, regardless of how the law is eventually settled on the question of "the extent to which states can condition privileges or advancement on participation in such treatment," the law is not "clearly established." *Hydrick v. Hunter*, 466 F. 3d 676, (9th Cir. 2006).[5]  To determine if a right was clearly established, a court will consider the particular facts and circumstances of the case and whether a reasonable official would know that his conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  Although civilly committed inmates are not prisoners, the state has an interest in detaining and treating individuals considered a danger to society. *See Hydrick*, 466 F.3d at 691.  The treatment

---

> to admit to and discuss all sexual offenses, both charged and uncharged.  It is only in this manner that the patient can begin to learn to understand and control his sexually violent behavior.  This treatment component is well-recognized and accepted in the field of treatment for sexual offenders.  The majority of offenses to be discussed have already been adjudicated and any undiscovered offenses may be discussed effectively in treatment without providing sufficient identifying information to put the resident in jeopardy of criminal prosecution.
> 5. Although admission to and discussion of all sexual offenses is critical to successful treatment, no patient is 'forced' to admit such offenses or forced to participate in treatment.
> 6. Sex offenders are often resistant to treatment and it is necessary to offer incentives to induce them to participate.  Residents who fully participate in treatment earn additional privileges as incentives such as paid institutional work, video game systems, and personal digital video disk systems.  All residents at the STU, including Salerno, are free to refuse to participate in treatment.  Such refusal results in withdrawal of the privileges offered as incentives to cooperative residents.  It would undermine our overall treatment program to accord full privileges to non-participants in treatment since residents who participated in treatment in order to obtain the privileges would not longer have an incentive to do so."
> *See* March 27, 2007 Affidavit of Merrill Main.

[5]  In *Hydrick*, civilly committed sexually violent predators brought a class action suit against directors of a California sexually violent predator facility alleging violations of their First Amendment right to free speech.  The sexually violent predators claimed that the incentive program used at the sexually violent predator facility violated their First Amendment rights by denying treatment advancement integral to release unless sexually violent predators participated in group treatment.  466 F.3d at 684.

program at the STU Annex is facially related to the purposes for which Plaintiff was detained. There is no First Amendment right as applied in this case that is clearly established, and there is no genuine question of material fact as to whether a reasonable official would have known that he was violating Plaintiff's constitutional rights by following sexually violent predator treatment policies. Defendants are entitled to qualified immunity, and summary judgment is granted in favor of Defendants.[6]

## IV.    Conclusion.

For the reasons set forth above, Plaintiff's request for Pro Bono Counsel is **DENIED;**[7] Defendants' Motion for Summary Judgment is **GRANTED** as to all Defendants, including those not yet served; and this case is **CLOSED**.          /s/ Faith S. Hochberg

                                                                    Hon. Faith S. Hochberg, U.S.D.J.

---

[6] As a separate and independent basis, supervisory Defendants Brown, Rogers, Lagana, and Main, who Plaintiff alleges violated his First Amendment right to free speech by allowing the incentive treatment program to continue at the STU Annex, are also entitled to summary judgment because respondeat superior liability is not a basis for §1983 claims. *See Monell v. New Jersey City Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

[7] In a letter received by this Court on May 15, 2007, Plaintiff reinstated his Motion for Pro Bono Counsel. This request was previously denied in Judge Shwartz's January 29, 2007 letter opinion. District Courts have broad discretion in determining whether the appointment of counsel is appropriate. 28 U.S.C. §1915(c)(1); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). A court will first consider whether a "claimant's case has some arguable merit in fact and law." *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002). If the applicant satisfies this threshold requirement, the Court will consider: (1) the plaintiff's ability to present his case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigations will be necessary and the ability of the plaintiff to pursue an investigation; (4) the extent to which a case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) the plaintiff's capacity to retain counsel on his own behalf. After considering the foregoing factors, Magistrate Judge Shwartz denied Plaintiff's request for Pro Bono Counsel. Plaintiff has failed to allege any change in circumstances that would warrant reconsideration of this decision.